IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GINA LAWRENCE,

        Plaintiff,　　　　　　　　　　　Civil No. 05-160-AA

   v.　　　　　　　　　　　　　　　　　OPINION AND ORDER

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.
_____

TIM WILBORN
Wilborn & Associates, P.C.
2020-C SW 8th Avenue, PMB # 294
West Linn, OR 97068-4612
    Attorney for plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

L. JAMALA EDWARDS
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
    Attorneys for defendant

1    - OPINION AND ORDER

AIKEN, Judge:

Plaintiff Gina Lawrence seeks judicial review of the Social Security Commissioner's final decision denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act). This court has jurisdiction under 42 U.S.C. § 405(g). The Social Security Commissioner's decision is reversed and remanded for further proceedings.

## BACKGROUND

On May 23, 1997, plaintiff applied for DIB, alleging disability as of March 21, 1997. Tr. 67-69. After plaintiff's application was denied initially and on reconsideration, plaintiff timely requested a hearing before an administrative law judge (ALJ). Tr. 60. On March 10, 1999, plaintiff and plaintiff's daughter, Kendra Schmitt, appeared and testified before the ALJ. Tr. 724-55. On September 1, 1999, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 335-42. On December 14, 2001, the Appeals Council reversed and remanded to the ALJ. On March 29, 2004, after another hearing, the ALJ issued a decision again finding plaintiff not disabled within the meaning of the Act. Tr. 32-33. On January 27, 2005, the Appeals Council denied review, rendering the ALJ's decision the final agency decision. Tr. 6-10. Plaintiff now seeks judicial review.

Born in 1958, plaintiff completed high school, received a Bachelor of Arts degree in Psychology, and has been certified in massage therapy. Tr. 67, 102, 730. Plaintiff has past relevant work as a phone sales person, massage therapist, administrative attendant, home health care provider, census enumerator, coordinator, recreation room attendant, and outside sales person. Tr. 731-35, 800-02. Plaintiff alleges disability as of March 21, 1997 due to fibromyalgia, adjustment disorder, sciatica, cervical sprain, depressive disorder, somatoform disorder, and inner ear disorders. Tr. 67,

271, 294, 585-587, 598, 610, 614, 626, 649.

## **DISABILITY ANALYSIS**

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). For purposes of DIB, plaintiff's last insured date is September 30, 2005. Therefore, to be eligible for DIB, plaintiff must establish disability as of that date.

The Commissioner has established a sequential process of up to five steps for determining whether a person is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. At step one, the ALJ found that plaintiff had not engaged in "substantial gainful activity" during the period of alleged disability. Tr. 21; 20 C.F.R. § 404.1520(b).

At step two, the ALJ found that plaintiff has medically determinable, severe impairments. Tr. 21-22, 32; 20 C.F.R. § 404.1520(c). Specifically, the ALJ found plaintiff's ability to work limited by her fibromyalgia, adjustment disorder, and a somatoform disorder. However, at step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 32; 20 C.F.R. § 404.1520(d). Thus, the inquiry proceeded to step four.

At step four, the Commissioner assesses the claimant's residual functional capacity (RFC) to determine whether the claimant can perform relevant past work. The Commissioner must assess the sustained work-related activities the claimant can perform on a regular and continuing basis, despite the limitations imposed by their impairments. 20 CFR §§ 404.1520(e), 404.1545. Based on her RFC, the ALJ found that plaintiff could not perform her past relevant work, and the inquiry

3     - OPINION AND ORDER

proceeded to step five. Tr. 32.

At step five, the burden shifts to the Commissioner to demonstrate that there are a significant number of jobs in the national economy that the claimant can do, given the claimant's RFC, age, education, and work experience. *Yuckert*, 482 U.S. at 141-142; *Tackett v. Apfel*, 180 F.3d 1094, 1098-89 (9th Cir. 1999); 20 C.F.R. § 404.1560(c)(2). If the Commissioner meets this burden, the claimant is not disabled. 20 CFR § 404.1566. Relying on the Medical-Vocational Guidelines and vocational expert testimony, the ALJ found that plaintiff could perform other work existing in the national economy, including positions as a small products assembler, electronics worker, or laundry folder. Tr. 32-33. Accordingly, the ALJ determined that plaintiff was not disabled under the Act at any time through the date of his decision. Tr. 33.

Plaintiff challenges the ALJ's evaluation of the evidence in determining her RFC and her ability to perform other work at step five of the sequential process.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, this court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986)). The reviewing court "may not substitute its judgement for that of the Commissioner," and variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

**DISCUSSION**

Plaintiff contends that the ALJ failed to reach an accurate RFC assessment because he improperly assessed her credibility, improperly assessed the medical evidence and improperly discredited lay witness testimony.

**A.  Plaintiff's Credibility**

Plaintiff testified that she is in constant pain and that after 15 to 20 minutes of sitting, standing, or walking, she must alternate positions. Tr. 770-71. Additionally, plaintiff testified that she suffers from irritable bowels, fatigue, imbalance, and panic attacks. Tr. 776, 778-79. Plaintiff testified that her fatigue, which is brought about by normal household activity, keeps her in bed three or four days per week. Tr. 776-77. Plaintiff admits that she has "good days" and "bad days," but typically, plaintiff testified that she is able to be active for about 20 minutes, then needs to rest for an hour. Tr. 777, 786.

The ALJ found plaintiff's subjective complaints and their effect on her ability to work "not totally credible" and that plaintiff "is an individual who is focused on finding limitations for herself." Tr. 28, 32. Thus, the ALJ rejected plaintiff's testimony.

Once the claimant has shown an underlying impairment supported by objective medical evidence, the ALJ may not reject the alleged severity of the symptoms without specific findings stating clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996); *Cotton v. Bowen*, 799 F.2d 1403, 1404 (9th Cir. 1986). In making such findings, the ALJ must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the

5    - OPINION AND ORDER

claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id*.

In his credibility findings, the ALJ relied on some questionable evidence of record. For example, the ALJ found that the breadth of plaintiffs complaints "encompass medical problems that are not substantiated by the medical record," and specifically pointed to plaintiffs claims of constipation and diarrhea. Tr. 28. However, the record reflects that plaintiff has a history of reporting these symptoms to doctors and the ALJ cites no other impairment that lacks supporting medical evidence. Tr. 289, 300, 676.

Additionally, the ALJ found plaintiff's "minimal prescriptions" contradicted her claims of extreme limitations. Tr. 29. However, the record reflects that plaintiff lacked insurance and a physician opined that such prescriptions would be of limited effect. Tr. 322, 650.

The ALJ also found inconsistent plaintiff's report to Dr. Stolzfus that her husband was "abusive" and "non-supportive" with other reports that her husband was a "source of her support and that she worked for him." Tr. 29. However, the context for plaintiff's statements to Dr. Stolzfus appears to be an attempt to determine plaintiff's mental well-being, and while the ALJ did not provide a citation for the latter statement, it appears to be a reference to finances.

Overall, however, I find the ALJ's findings were legally sufficient. The ALJ found that despite plaintiff's "alleged disability, she was able to withstand the physical challenges of moving to Oregon." Tr. 28. Additionally, even though plaintiff's activities of daily living are not extensive, she manages to cook, do household chores, go shopping, and she even traveled to Costa Rica. Tr.

6    - OPINION AND ORDER

632, 647. The ALJ also noted that the plaintiff was able to obtain a degree though correspondence courses and spent nine days on campus each term. Tr. 310, 645. Given nature and severity of plaintiff's complaints, such activities are inconsistent with her alleged limitations.

The ALJ also found that plaintiff "participat[ed] in a host of work activities" during the alleged disability period. Tr. 28. While the ALJ recognized plaintiff's 1998-2001 employment as unsuccessful work attempts, the fact that plaintiff was able to perform activity as a massage therapist detracts from her credibility in light of her subjective complaints. Tr. 21.

Next, the ALJ found that the "medical record does not support the degree of limitation alleged." Tr. 28. While an ALJ cannot reject the severity of subjective complaints solely on the lack of objective evidence, the ALJ may nonetheless look to the medical record for inconsistencies. *See v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). Here, the ALJ cited a November 1998 examination performed by Dr. Bufton as being "completely contrary" to plaintiff's complaints. Tr. 28. During this examination, Dr. Bufton found plaintiff to be "neurologically and orthopedically intact" and noted that her "limitations would be based on her subjective pain complaints." Tr. 301. Another physician, Dr. Tilley, found that plaintiff had no physical limitations. Tr. 657. Thus, the medical record contains evidence that is contradictory to plaintiff's alleged physical limitations.

Further, as noted by the ALJ, plaintiff reported that she quit jobs due to mental strain and admitted that physical problems did not force her to quit, contrary to her claims of constant disabling pain. Tr. 29.

Finally, the ALJ notes that plaintiff's veracity was questioned by Dr. Tilley. Tr. 29. Dr. Tilley reported that it was "difficult to judge" plaintiff's veracity, because she was "somewhat

scattered and a little difficult to follow," although he "didn't find any frank inconsistencies." Tr. 655. While this is not evidence of malingering, Dr. Tilley's concern raises questions regarding plaintiff's credibility, and the ALJ was entitled to rely on it. Where evidence is susceptible to differing interpretations, the ALJ's findings are entitled to deference. *Morgan*, 169 F.3d at 599.

In conclusion, despite some questionable findings, the ALJ provided legally sufficient reasons for rejecting plaintiff's subjective complaints of disabling pain.

**B.   Medical Source Statements**

Plaintiff contends the ALJ improperly evaluated the medical evidence regarding her physical and mental impairments. Specifically, plaintiff argues that the ALJ erred in rejecting in whole or in part the opinions and conclusions of Drs. Bouillon, Kaplan, Northway, Stoltzfus, and Black. Additionally, plaintiff argues that the ALJ placed too much weight on a portion of Dr. Bufton's opinion, while disregarding other findings. Finally, plaintiff claims the ALJ improperly excluded the opinions of non-examining DDS doctors.

If a treating or examining physician's opinion is uncontradicted, the ALJ must provide "clear and convincing" reasons to reject the physician's opinion supported by substantial evidence in the record. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If contradicted, the ALJ must provide "specific and legitimate" reasons for rejecting a treating or examining physician's opinion. *Id.; Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

**1. Dr. Bufton**

The ALJ relied heavily on the opinion of Dr. Bufton, an examining physician, who opined that plaintiff was neurologically and orthopedically intact and that any limitations would be based on her subjective pain complaints. Tr. 301. Plaintiff asserts that the ALJ's reliance on Dr. Bufton's

medical opinion is faulty because: 1) Dr. Bufton was allegedly unaware of her fibromyalgia diagnosis, and 2) the ALJ did not accept Dr. Bufton's finding that plaintiff can only sit for up to one hour without interruption.

Plaintiff was first diagnosed with fibromyalgia/myofascial pain syndrome by Dr. Crumpacker on March 30, 1998, and Dr. Bufton examined plaintiff on November 19, 1998. Tr. 298, 301. While Dr. Bufton makes no mention of a fibromyalgia diagnosis, plaintiff does not indicate anywhere in the record that states Dr. Bufton was unaware of this diagnosis. However, while the ALJ largely adopted Dr. Bufton's analysis in assessing plaintiff's RFC, he did not incorporate the sitting limitation found by Dr. Bufton. Absent explanation for the rejection of this limitation, the ALJ must consider it.

### 2. Dr. Bouillon

Dr. Bouillon treated plaintiff, on two or three occasions, from March to June of 1997. Tr. 259. In February of 1998, Dr. Bouillon filled out a RFC form, prepared by plaintiff's counsel, indicating that plaintiff could not sit or stand for more than fifteen to twenty minutes without frequent changes of position and could not sit, stand, or walk for more than two hours total in an eight hour workday. Dr. Bouillon also felt that plaintiff required at least twenty minutes of walking and unscheduled breaks during an eight hour workday. Tr. 263-264. Additionally, Dr. Bouillon noted that plaintiff could rarely lift less than ten pounds at work but should never lift ten pounds or more or perform repetitive reaching, handling, or fingering. Tr. 265. The ALJ gave limited weight to Dr. Bouillon's opinion, because the "conclusions are contrary to the specific medical findings in the MRI" and that Dr. Bouillon had seen the plaintiff "only approximately twice before concluding that she could lift less than 10 pounds on a rare basis." Tr. 25. Finally, the ALJ asserts that Dr.

9    - OPINION AND ORDER

Bouillon's "conclusions are proclaimed without any reference to medical findings to support them." Tr. 25.

While an ALJ may reject a physician's checklist that is unsupported by medical findings, Dr. Bouillon's opinion was based on an MRI indicating that plaintiff had minimal bulging in the L5-S1 disc. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); Tr. 199. However, the ALJ cites no evidence of record suggesting that Dr. Bouillon's opinion is inconsistent with the MRI. Because the ALJ may not substitute his opinion for that of a physician presenting competent evidence, Dr. Bouillon's opinion cannot be rejected on this ground. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

### 3. Dr. Kaplan

Next, plaintiff cites an August 1997 report from Dr. Kaplan, a treating physician, indicating that she can only lift less than ten pounds. Tr. 232. Dr. Kaplan's opinion was not specifically addressed by the ALJ; however, defendant asserts that Dr. Kaplan simply recounted plaintiff's own limitations and serves not as a medical opinion, but rather as subjective testimony. Defendant is correct that medical reports which are premised on discredited subjective complaints may be similarly discounted. *Tonapetyan*, 242 F.3d at 1149. However, it is not the role of this court to make such findings of fact.

### 4. Dr. Northway

In July of 1999, Dr. Northway completed a neuropsychological screening evaluation for plaintiff. Tr. 320-28. Dr. Northway opined that plaintiff was unable to complete a normal workweek and workday without interruptions from psychologically based symptoms. Tr. 27, 565. However, the ALJ discounted this opinion by stating that "the evidentiary record did not show any loss of jobs

due to attendance problems." Tr. 27. Additionally, the ALJ referenced plaintiff's past work as a massage therapist as evidence that plaintiff "was able to attend and concentrate sufficiently to schedule and provide treatment with a variety of customers and at varying locations." Tr. 27. I find the ALJ's reasons for rejecting Dr. Northway's testimony inadequate.

The record may not show any job loss due to attendance problems, but plaintiff has not worked at all since 2001. Tr. 457. Moreover, the record does not establish that plaintiff worked a "normal" workday and workweek as a massage therapist. Finally, Dr. Tilley evaluated plaintiff in November 2002, and while he found no significant physical impairments, he concluded that plaintiff's complaints were mostly psychological and referred to Dr. Northway's opinion as an accurate assessment. Tr. 653-58. Therefore, the ALJ's reasons for discounting Dr. Northway are neither clear and convincing nor specific and legitimate.

   5. Dr. Stoltzfus

Plaintiff also contends that the ALJ improperly rejected the assessment of Dr. Stoltzfus, an examining psychologist. Dr. Stoltzfus interviewed plaintiff in November 2002 and determined that plaintiff has "legitimate physical problems, but the exact nature and severity of her physical problems are difficult to determine due to the presence of extreme somatoform disorder, which reaches proportions of a conversion disorder." Tr. 650. Dr. Stoltzfus noted that plaintiff's "MMPI results indicate straight-forward and non-defensive responses; her index was significant for depression, somatosizing stress and emotional difficulties, heightened anxiety, and social avoidance." Tr. 650. Additionally, Dr. Stoltzfus felt that plaintiff is "extremely distraught emotionally" and that ultimately there "is a high risk for developing severe psychiatric disorder." Tr. 650. The ALJ discounted Dr. Stoltzfus's opinion because: 1) Dr. Stoltzfus's Global Assessment of Functioning (GAF) score was

lower than previous GAF scores; 2) his GAF score of 50 was "based, in part, on physical limitations that are not supported by the medical record"; 3) a perceived contradiction between Dr. Stoltzfus's findings that plaintiff was "unable to respond appropriately to the public and coworkers," yet able to respond appropriately to supervisors; and 4) Dr. Stoltzfus remarked that plaintiff was able to "keep medical appointments, find and move into a duplex, and maintain at least a mild sense of hope for the future." Tr. 27.

I find that the ALJ's reasons for discounting Dr. Stoltzfus's opinion fail to properly address his opinion regarding plaintiff's mental state and his assessment of plaintiff's limitations. Regardless of plaintiff's GAF score, Dr. Stoltzfus opined that plaintiff suffers from depression, anxiety and is at risk for developing a severe psychiatric disorder, and as a examining specialist, his opinion is entitled to weight. *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004); *Holohan*, 246 F.3d at 1202. Particularly in light of Dr. Northway's and Dr. Tilley's opinions, the ALJ's findings are not legally sufficient to discount Dr. Stoltzfus's opinion.

### 6. Dr. Black

Next, plaintiff contends that the ALJ was incorrect in the assessment of Dr. Black's medical opinion. In May 2002, Dr. Black diagnosed plaintiff with bilateral ear concussion syndrome with suspected perilymph fistula and secondary endolymphatic hydrops arising from a motor vehicle accident in 2000. Tr. 689. Dr. Black opined that in order to treat plaintiff's perilymph fistula, she would need to avoid even minimal levels of exertion. Tr. 634. Additionally, Dr. Black prescribed a lengthy regimen of bedrest. Tr. 636.

The ALJ discounted both Dr. Black's diagnosis and the resulting limitations imposed by him. First, the ALJ stated that the medical evidence did not establish these impairments as "severe." Tr.

23. The ALJ pointed to other references in the record of sinusitis and allergies as potential sources of "stuffiness" and "head problems." Tr. 23. The ALJ noted that "other medical sources only assume the existence of these diagnoses," and pointed to Joyce Johnson, ANP as making no independent diagnosis and providing "no medical evidence to support" Dr. Black's "alleged diagnosis." Tr. 23. However, Joyce Johnson examined plaintiff in April of 2003, and found "fluid in right ear consistent with perilymph fistula." Tr. 679. Regardless, as a treating specialist, Dr. Black's diagnosis and opinion are entitled to weight, and absent contradictory evidence in the record, the ALJ cannot disregard it on this ground. *Benecke*, 379 F.3d at 594 n.4.

Next, the ALJ stated that the "medical evidence provides minimal findings" regarding Dr. Black's diagnosis and that the tests performed by Dr. Black were "questionable" and "not generally recognized among his peers." Tr. 23, 24. The ALJ does not, however, cite any evidence of record to support these assertions.

The ALJ also found Dr. Tilley's report of no physical problems inconsistent with Dr. Black's diagnosis. Tr. 24. Dr. Tilley reviewed Dr. Black's diagnosis, and while their findings differ regarding plaintiff's physical abilities, Dr. Tilley does not specifically challenge Dr. Black's diagnosis. Tr. 654.

Additionally, the ALJ rejected the functional limitation prescribed by Dr. Black, stating that "inconsistencies abound in Dr. Black's reports." Tr. 23. Specifically, the ALJ pointed to Dr. Black's report that plaintiff had been disabled by her motor vehicle accident in August 2000, and also that plaintiff had been disabled since April 2001. Tr. 23. The ALJ further noted that while a "regimen of complete bedrest" was prescribed, plaintiff "was extremely active, moving several times, flying on a trip to Costa Rica, traveling to visit her mother in eastern Oregon, and continuing to drive a

car." Tr. 23-24. While some evidence in the record suggests that plaintiff failed to follow Dr. Black's regimen or engaged in activity inconsistent with it, Tr. 644-45, she made the trip to Costa Rica approximately one year before she began seeing Dr. Black imposed these limitations, and it is not clear when the trip to visit plaintiff's mother in eastern Oregon occurred. Tr. 632.

Finally, the ALJ found that Dr. Black provided inconsistent opinions that plaintiff "could not work yet she also could work." Tr. 24. The ALJ noted that Dr. Black stated that plaintiff could perform office work if she maintained "fistula precautions," but "at another time, the doctor states the claimant is 'not released to work,' but no reasons for this conclusion are provided." Tr. 24, 689. Notably, on September 11, 2003, Dr. Black described a worsening of plaintiff's symptoms following a July 2003 incident where a lounge chair collapsed "causing her to fall to the floor and jarring her severely," and following that, on September 19, 2003, Dr. Black stated that plaintiff was not released to work. Tr. 689, 698. Thus, Dr. Black's work restrictions are not necessarily inconsistent.

In sum, the ALJ reasons for rejecting Dr. Black's diagnosis and opinion are not clear and convincing. While additional medical evidence would be helpful, with no dispute of Dr. Black's diagnosis, the ALJ cannot simply disregard it.

### 7. DDS Physicians

Plaintiff asserts that the ALJ's RFC hypothetical improperly excluded the opinion of two DDS doctors who noted that plaintiff has deficiencies of concentration, persistence, or pace often resulting in failure to complete tasks in a timely manner. Tr. 213, 253. While the record reflect psychological impairments of depression, anxiety, and somatoform disorder, no psychological examiner rendered a similar opinion regarding plaintiff's concentration or pace, and the ALJ limited plaintiff to simple, unskilled work. Therefore, I find no error.

### C.  Lay Witness Testimony

Finally, plaintiff argues that the ALJ improperly rejected the statements and testimony of Laura Stevenson, M.S.W, Larry Keele, and Tamyra Schmitt.  Ms. Stevenson, a counselor, had seen plaintiff weekly for approximately three months when she completed a Mental Impairment Questionnaire and indicated that she believed plaintiff would be absent from work more than four times a month.  Additionally, Ms. Stevenson indicated that plaintiff would have marked limitations in her ability to: 1) maintain attention for two hour segments; 2) maintain regular attendance and be punctual; 3) complete a normal workday and workweek without interruptions from psychologically based symptoms; 4) perform at a consistent pace without an unreasonable number and length of rest periods; 5) manage the stress of semi skilled and skilled work; and 6) be aware of normal hazards and take appropriate precautions. Tr. 707-15.

Larry Keele, plaintiff's ex-husband, described plaintiff's limitations in her activities of daily living.  Tr. 509-512.  Specifically, he stated that plaintiff experienced pain and fatigue while doing basic household chores and could not complete these chores without assistance.  Further, Keele testified that plaintiff has very limited social interaction in person or on the telephone and that occasionally she stays in bed for days at a time.  Tr. 509-512.

Finally, Tamyra Schmitt, plaintiff's daughter,  testified regarding plaintiff's apparent need for rest after any exertion. Tr. 794-95.  The ALJ believed Ms. Schmitt testified truthfully, but discounted her testimony as not being useful to determine plaintiff's RFC.  Tr. 30.  In contrast, the ALJ failed to address Ms. Stevenson's report or Mr. Keele's statement.

Before rejecting the testimony of a lay witness, the ALJ must provide germane reasons for each witness whose testimony is rejected.  *See Smolen*, 80 F.3d at 1288-89; *Dodrill v. Shalala*, 12

15     - OPINION AND ORDER

F.3d 915, 919 (9th Cir. 1993). Given the ALJ's credibility finding, the reason for discounting Ms. Schmitt's testimony is legally sufficient. However, the ALJ did not provide reasons germane to Ms. Stevenson or Mr. Keele, and to say the lay testimony presented in this case is inconsistent with the psychological evidence of record would be inaccurate. *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir. 2001).

**D. The Vocational Hypothetical**

Finally, plaintiff argues that the ALJ's improper rejection of the medical evidence and witness testimony resulted in a deficient vocational hypothetical. An ALJ's hypothetical to a vocational expert (VE) must be "accurate, detailed, and supported by substantial evidence." *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2000) (citation omitted).

In the ALJ's first hypothetical, the ALJ proposed that the individual was

> capable of lifting and carrying twenty pounds occasionally, would be able to stand six of eight hours or sit six of eight hours. She would only occasionally be required to climb, balance, stoop, kneel, crouch, or craw[l], would need to avoid hazards, and would be capable of limited public interaction and occasional interaction with co-workers. And would be capable of simple one, two, three step work.

Tr. 801. In response to this hypothetical, the VE suggested that a person with the described abilities could work in small products assembly, as an electronics worker, or as a laundry folder. Tr. 802. In a second hypothetical, the ALJ added the condition that the person "is going to be missing two or more days per month because of inability to persist at the job." The VE said that such a person would be precluded from employment. Tr. 802-03.

The hypothetical scenarios presented by the ALJ to the VE did not consider Dr. Bufton's sitting limitation or plaintiff's mental impairments as reflected by the psychological opinions of

record. Therefore, it was legally insufficient and the Commissioner cannot rely on it.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings, or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman,* 211 F.3d at 1178 (quoting *Smolen,* 80 F.3d at 1292). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Dodrill*, 12 F.3d at 919); *Nguyen v. Chater*, 100 F.3d 1462, 1466-67 (9th Cir. 1996); *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991). Here, I find that only the first factor is met.

As explained above, the ALJ erred in his evaluation of plaintiff's psychological providers. Thus, the ALJ did not consider or evaluate how plaintiff's psychological limitations affect her functional abilities. Therefore, the ALJ's RFC assessment is not supported by substantial evidence,

and the VE was not presented with a hypothetical that accurately reflects plaintiff's limitations. However, given the ALJ's credibility finding, plaintiff's level of activity, and the record as a whole, I do not find that it is necessarily appropriate to credit as true the opinions of Drs. Kaplan, Bouillon, Black, or Dr. Bufton's sitting limitation; rather, the ALJ must consider these opinions when assessing plaintiff's physical capabilities and either accept them or provide legally sufficient reasons for rejecting them. Additionally, the ALJ must develop the record appropriately and consider the opinions of Drs. Northway and Stoltzfus with regard to plaintiff's psychological impairments and any resulting limitations. Therefore, outstanding issues remain and remand for further proceeding is appropriate.

## **CONCLUSION**

The ALJ's finding that plaintiff is not disabled within the meaning of the Act is not supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is REVERSED and REMANDED for further proceedings to evaluate the medical record as a whole, obtain the testimony of a psychological expert, if necessary, and present a vocational expert with a hypothetical that reflects plaintiff's limitations.

IT IS SO ORDERED.

DATED this 22 day of June, 2006.

                                         /s/ Ann Aiken
                                           Ann Aiken
                              United States District Judge